UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GREELEY G. MIKLASHEK, M.D.,

    Plaintiff,

vs.

COUNTY OF MUSKEGON, JAMES
ELWELL and GLENN EATON,

    Defendants.

CASE NO: l:04-cv-0787

HON. ROBERT HOLMES BELL

---

| | |
|---|---|
| H. Rhett Pinsky (P18920) | Richard H. Winslow (P22449) |
| PINSKY, SMITH & FAYETTE, LLP | CUMMINGS, McCLOREY, DAVIS & ACHO |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 146 Monroe Center NW, Ste. 1515 | 2851 Charlevoix Drive SE, Suite 327 |
| Grand Rapids, MI  49503 | Grand Rapids, MI  49546 |
| 616/451-8496 | 616/975-7470 |

---

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

FACTS

Dr. Miklashek provided contract psychiatric services to the Muskegon County Community Mental Health Services (MCCMHS) pursuant to a series of written contracts. The contracts were renewable in one-year terms (Exhibit A, p. 13 of 22 @ ¶I) and renewed in one-year increments until September 30, 2004;  (Plaintiff's Complaint, ¶7.)  At ¶4 of **Duties** (Exhibit A, p. 2 of 6), the Contract which was not renewed states:

> 4.  The Physician will provide supervision to the Physician's Assistants contracted by Community Mental Heal in accordance with Physician's Assistants licensing requirements.

Thirty days prior to the termination of the contract, the Defendants notified Dr. Miklashek that the contract would not be renewed per Exhibit A, p. 13 of 22.  Dr. Miklashek brings suit against the County of Muskegon and two officials in their official capacity.  In Count I, he alleged non-renewal was retaliation for exercise of First Amendment free speech.  A similar allegation is contained in Count II, wherein he claimed violation of the Michigan Constitution of 1963, Article I, Section 5.  In Count III, he claimed violation of "state public policy."  He claimed violation of the Michigan Whistleblower's Protection Act in  Count IV.  For reasons which follow, the Plaintiff's Complaint should be dismissed pursuant to F.R.Civ.P. 56(b).

ISSUE I:  CIVIL RIGHTS CLAIM - FIRST AMENDMENT

Claims of violation of free speech are analyzed under the Liberty Interest Theory as described by *Perry* v. *Sindermann*, 408 U.S. 593 (1972), giving consideration to, but not determined by, whether the Plaintiff is an employee or contractor; *Board of Commissioners Wabaunsee* v. *Umbehr*, 518 U.S. 668, 678-681 (1996).

Whether the subject of the speech is of public concern is a question of law; *[Bonnell* v. *Lorengo*, 241 F.3d 800, 809-10 (6th Cir.), cert. den. 534 U.S. 951 (2001); *Banks* v. *Wolfe Board of Ed.*, 330 F.3d 888, 892 (C.A. 6, 2003)]; as revealed by the record as a whole; *Connick* v. *Meyers*, 461 U.S. 138, 147, 148 (1983).  To qualify for constitutional protection, the speech must be made in good faith; that is, not a false statement made carelessly, knowingly or recklessly, *Pickering* v. *Board of Education of Township High School District 205, Will County*, 391 U.S. 563, 571, 572, 574 (1968).  Also, the matters spoken of must concern matters of public interest rather than a voicing of personal grievances; *Connick, supra* at 146.

2

If the employee's statement concerns only personal grievances, the Court will not review the matter absent some other recognized basis such as contractual tenure or statutory issues, such as pled in Counts III and IV of the Plaintiff's Complaint.

Count I of the Complaint contends that reporting to the Department of Community Health was considered by Defendants to be insubordination, but because the content of the speech *allegedly* addressed matters of public concern, Plaintiff claims to be is protected from retaliation.

Plaintiff's cover letter to the Michigan Department of Community Health is attached as Exhibit B. This letter states in part as follows:

> Frankly, I believe the enclosed copies of memos from myself ... are essentially self-explanatory.

A.  One of those memos, March 18, 2004 (Exhibit C) states:

> I do not have a file of credentials, and frankly, do not know the credentials of either of the PAs that work in this office.

Another memo (Exhibit D) states,

> There is also a requirement for maintaining a permanent record in the office or the facility of each supervising physician and Physician's Assistant with respective license numbers.

Whether or not this is true, it does not touch on a matter of public concern. He is suppose to know the Physician's Assistants' license number and names. That the Physician's Assistants possessed the required certification was not in doubt. He complained not that the Physicians Assistants were unlicensed, but that *he* did not have the certificates (Exhibit M, Miklashek dep., p. 59).

> Q. And you never asked for the Physicians Assistants to give you their license number?
>
> A. I believe that's what I did when I gave each one of them a copy of the Michigan State Code.

This fairly suggests that he only mentioned this as his private, turf war.   Plaintiff testified in deposition that he does not know if the certificates themselves were hanging on the wall for the public to see.[1]

> When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review a personnel decision.  *Connick* v. *Meyers*, 416 U.S. 138, 147 (1983).

Whether the Plaintiff's motivation was to invite public scrutiny of the administrative framework, or something more self indulgent, this Court should conclude that whichever person has custody of the Physician's Assistant name and license number is not considered by the public to be an important concern.  *Pickering, supra*, at 571; *Chappel* v. *Montgomery*, 131 F.3d 564, 572 (C.A. 6, 1997); and *Rahn* v. *Drake Ctr.* 31 F.3d 407, 411 (C.A. 6, 1994).  Even a Plaintiff's altruistic motive does not elevate a personal grievance to public concern status, *Chappel, supra*, at 148. Therefore, the alleged retaliation for the Plaintiff reporting this situation to the Michigan Department of Community Health is not a subject of First Amendment protection.  Even if this is why the contract was not renewed, the Plaintiff has no legal recourse under 42 U.S.C. 1983 and the First Amendment.

B.     The second area of the Plaintiff's criticism of the Defendants also appears in the same Memorandum to the Defendants dated July 18, 2004 (Exhibit C), the Plaintiff  states in part as follows:

---

[1] Certificates existed, and were kept by an administrator, Exhibit D, as permitted by law. MCL 333.17049(4) states that the certificates shall be kept on premises.  MCL 333.17072(4) states the Physician's Assistant shall display the certificate where the Physician's Assistant practices.

> As you and I have discussed and I have clarified in a series of memos dating back to last summer, I and you consider myself to be a consultant who reviews their written work and signs off on it. This, in no way, indicates a supervisory relationship, simply a consultive one. .... I have not been asked to, nor done, performance evaluations on either one of them. I consider my relationship as defined by yourself and this organization as a peer relationship, or at least a collegial one. [2]

Another memorandum from Plaintiff to Defendants which was forwarded to the Department of Community Health, dated January 15, 2004 (attached as Exhibit D), reads, in part, as follows:

> *** The two elements that stand out most significantly to myself are items 4B [MCL 333.1749(1)(b)]. The supervising physician is responsible for "evaluation of the PA's performance."
>
> If, indeed, I am the supervising physician for the PA's, you need to spell that out in writing ... .

For purposes of this Motion, the Defendants concede a legitimate public interest exists in Physician's Assistants being supervised by a licensed medical doctor, as required by state regulations. Defendants contest Plaintiff's interpretation of law as to what is required by the "evaluative" aspect of the supervisory role, which is discussed in detail in Issue III.

Although a public employee is not required to prove the truth of his speech in order to secure protection of the First Amendment, *[Barnes* v. *McDowell*, 848 F.2d 725, 734-35 (C.A. 6, 1998). *Chappel, supra* at 577] protection is not available when a public employee "carelessly, knowingly or recklessly" makes false statements. It is the burden of the Defendant to establish that the employee knew or was carelessly or recklessly indifferent to the fact that his speech was

---

[2]The Defendants deny this statement reflects their view, and rely upon the written contract's description of the Plaintiff's duties as governing this relationship.

false, *Williams* v. *Commonwealth of KY*, 24 F.3d 1526, 1535-36 (6th Cir. 1994), *Pickering, supra*, at 574.

To prove the Plaintiff must have made the complaint knowing of its falsity, or carelessly or recklessly indifferent to its untruth, Defendants start with the proposition that the Plaintiff is, by law, held to have knowledge of the content of the contract he signed. The Contract (attached as Exhibit A) is signed on p. 22 of 22 by Plaintiff on 11-20-03, "effective 10-1-03" for service between Plaintiff and Defendants, and includes the following at its Attachment A, at page 2, paragraph 4:

> *4. Supervision*
> *The Physician will provide supervision to the Physician's Assistants contracted by CMH in accordance with Physician's Assistant licensing requirements.*

On page 6 of this same Attachment (Exhibit A), the Plaintiff's enumerated duties expressly include:

> *5. Documentation/Reporting Requirements:*
> *For supervision of Physician's Assistant(s), complete and submit required documentation.*

Plaintiff was himself responsible to perform these contractual duties by the means and manner *he* chooses, *Janice* v. *Hodzinski*, 176 Mich App. 49 (1989). Given that the supervisory duties were his own responsibility, what he reported to be deficient <u>had to be made knowing that it was false, or carelessly or in reckless disregard of the truth</u>; (Dr. Miklashek testified that he complained to the State of Michigan regarding lack of supervision even while he was in continuous discussion about cases (Exhibit M, Miklashek dep., pp. 22, 23, 28, 37, 46, 56, 57, 60 & 77-79) and medication (Exhibit M, Miklashek dep., p. 23) with the Physicians Assistants. OR,

if what he complained of to the State was true, the act of reporting his own misconduct does not earn or achieve constitutional protection from disciplinary consequences. [3]

> Simply put, I believe that I have been put in the position of being forced to sign off on PAC notes, which could be construed as supervision, when in fact no such supervisory relationship actually existed and in fact the two Physician's Assistants at this address have essentially been practicing independently under the administrative supervision of Mr. Parnin, a Bachelors-level Social Worker. (Exhibit B)

On this point, Dr. Miklashek testified that there had been formal meetings to discuss individual cases (Exhibit M, Miklashek dep., pp. 22, 23), but they evolved into "hallway discussions" (Exhibit M, Miklashek dep., pp. 28, 37, 46 & 60) and review of every progress note, sometimes with his comments going back to the Physicians Assistants (Exhibit M, Miklashek dep., pp. 78-79). In his own words, he was allowed to consult but not supervise (Exhibit M, Miklashek dep., pp. 12-16, 55-59 & 62).

C.      If good faith speech is of private *and* public concern (as at least some of his report to the Department of Community Health is claimed by the Plaintiff to be), and the *public's interest* in hearing the speech does not outweigh the employer's interest in promoting efficient services to the public it serves, *Rose* held that the *Pickering* test favors the governmental employer; *Pickering, supra* at 568. *Rose* v. *Stephens*, 291 F.3rd 917, 921, 922 (C.A. 6, 2002). Where a confidential or policy-making, public employee is involved, the balance tips "definitely" in the employer's favor; *Rose* v. *Stephens*, 291 F.3d 917, 921 (C.A. 6, 2002).

> When such an employee speaks in a manner that undermines the trust and confidence that are central to his position, the balance

---

[3] Argued in terms of the Whistleblower's Protection Act, "If he blows the whistle on himself, he can still be fired."

> definitively tips in the government's favor because an overt act of disloyalty necessarily causes significant disruption in the workplace. *Rose, supra*, at 923

The conduct of Plaintiff reporting his own failure (to develop and implement requisite performance-evaluation procedures for Physician's Assistants he had contracted to supervise (Exhibit M, Miklashek dep., pp. 21, 22)) as a failure of the Physician's Assistants or the Muskegon County Community Mental Health Services is indisputably and greatly disruptive to the County's effort to deliver mental health services to the public.  Reliance on the use of Physicians Assistants is necessary for providing services to such a large, impoverished population, with the money available.

Although the Plaintiff is not exactly an employee, for purposes of First Amendment analysis, the adverse-job action sued upon is premised upon the strength of the employment relationship.  An independent contractor's employment relationship has been held to be a similar enough relationship for First Amendment protection.  *Board of County Commissioners, Wabaunsee County, KS* v *Umbehr*, 518 U.S. 668, 678 (1996).  But, Plaintiff's "right" to continue employment is no greater than Defendants' "right" to terminate the relationship for any reason that is not unlawful; *Connick, supra*, at 146.  When the Plaintiff speaks publicly, there can be a public impression that he speaks on behalf of MCCMHS.  This further justifies the Defendants taking the necessary action to distance MCCMHS from the Plaintiff   even by not renewing its contract with him.  *Elrod* v. *Burns*, 427 U.S. 347, 367 (1980) points out that "no clear line can be drawn between policy making and non-policy making positions."  See also, *McCloud* v. *Testa*, 97 F.3d 1536, 1557-58 (C.A. 6, 1996).

The contract (Exhibit A, Attachment A, p. 1 of 6) explains that the director or a designee of the director of MCCMH will administer performance of the contract.  In this instance, Mr. Parnin is that person.

To sue a governmental entity for violation of civil rights, the conduct must be attributable to the highest, policy-level-making authority; *Pembauer* vs. *Cincinnati*, 475 U.S. 4698 (1986). The Plaintiff's testimony does not support this requirement (Exhibit M, Miklashek dep., p. 26)

The Defendants contend that as a matter of law, under the facts pled and supported by discovery, they are entitled to summary judgment.

### ISSUE II:  CLAIM UNDER CONSTITUTION OF MICHIGAN, 1963

Plaintiff's second count alleges violation of the Michigan Constitution 1963.  Clearly, Plaintiff cannot sue these Defendants for violation of the State Constitution because the Defendants are not equivalent to the State of Michigan, and his claims are not barred by the Eleventh Amendment.  *Jones* v. *Powell*, 462 Mich 329 (2000); *Smith* v. *Michigan Dept. of Public Health*, 428 Mich 540 (1987); and *Pleasant* v. *Zaminski*, 895 F.2d 272, 277-278 (C.A. 6, 1990).

> We agree with the Court of Appeals majority that our decision in *Smith* provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee.  *Pleasant, supra*, *Id*. 277, 278

### ISSUE III:  WRONGFUL DISCHARGE   PUBLIC POLICY

Plaintiff's third count raises a claim of violation of  "public policy."  This claim is apparently brought as a state tort of "wrongful discharge" because all relevant law is found there.

In *Vagts* v. *Perry Drug Stores, Inc.*, 204 Mich App. 481 (1994) a claim of wrongful discharge was considered when an employee was fired for acting in accordance with a statutory duty (first exception).  See also *Dudewicz* v. *Norris Schmid, Inc.* 443 Mich. 68, 78, 80 (1983).

The Michigan Supreme Court noted that it has found "at-will-employment contracts" are not lawfully terminable if an employee is fired under any of the three following circumstances.

The *first* circumstance has been recently, judicially abrogated.  Disciplinary retaliation *was* considered contrary to public policy if it was prohibited by "explicit legislation," such as the Michigan Civil Rights Act, Whistleblower's Protection Act, Handicapper's Civil Rights Act, or OSHA. Plaintiff claims at ¶ 9 of his Complaint that he was required by law to advise the Michigan Department of Licensing and Regulation of two illegal practices, and, at ¶ 8 of his Complaint that he was protected from retaliation for doing so.  Defense counsel can find neither a statutory duty to report this alleged violation, nor any statute that protects the Plaintiff from retaliation. *Suchdolski* v. *Michigan Consolidated Gas Co.*, 412 Mich 692, 695, 696 (1982*)*; as recognized in *Vagts* v. *Perry Drug Store, Inc.*, 204 Mich App. 481 (1994), has been overruled by *Dudewicz* v. *Norris Schmid, Inc.*, 443 Mich. 68, 78-80 (1993).

> The COA should have considered this issue and should have found that any public policy claim is preempted by the WPA.  *Dudewicz*, at 78.
>
> \* \* \* \*
>
> \*\*\* a public policy claim is sustainable then, only where there also is  not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.  As a result, because the W.P.A. provides relief to Dudewicz for reporting his fellow employees' illegal activity, his public-policy claim is not sustainable. *Dudewicz* @ 80

Defendants argue in issue IV, that the Whistleblower's Protection Act does not apply because Plaintiff is an independent contractor, which is not within the scope of that Act.

The *second* circumstance is, being fired for refusing to violate a law.  The Defendants did not request or require the Plaintiff to disobey a law.  Relevant laws with respect to supervising

10

PAs are enumerated as follows.  Licensing rules and regulations begin with the definition of "Supervision" found first at MCL 333.16109, and reads:

> (2) "Supervision", except as otherwise provided in this article, means the overseeing or participation in the work of another individual by a health professional licensed under this article in circumstances where at least all of the following conditions exist:
>
> > (a)   The continuous availability of direct communication in person or by radio, telephone, or telecommunication between the supervised individual and a licensed health professional.
> >
> > (b)   The availability of a licensed health professional on a regularly scheduled basis to review the practice of the supervised individual, to provide consultation to the supervised individual, to review records, and to further educate the supervised individual in the performance of the individual's functions.
> >
> > (c) The provision by the licensed supervising health professional of predetermined procedures and drug protocol.

Clearly, Plaintiff was not fired for refusing to disobey a law.  By this statutory definition, "Supervision" requires "availability for consultation" and "review of work".  Defendants contracted with Plaintiff to provide whatever the laws require(Exhibit A, pp. 3, 4 9, 10 of 22 and numerous other pages), the Plaintiff was just unaware of it (Exhibit M, Miklashek dep., ,pp. 18, 27, 71-77).

> MCL 333.17001(1)(f) **Medicine; Definitions §17001.(1) as used in this part:**
>
> (f)  "Supervision" means that term as defined in §16109, except that it also includes the existence of a predetermined plan for emergency situations, including, but not limited to, the designation

11

>    of a physician to supervise a Physician's Assistant in the absence of the primary supervising physician.

Specifically as to supervision of Physician's Assistants, the state statute does require the supervising physician to do the following:

>    MCL 333.17049 **Supervision of Physician's Assistants; records, group of physicians may designate supervising physician.**
>
>    §17049.
>    (1) In addition to the other requirements of this section and subject to subsection (5), **a physician who supervises a Physician's Assistant is responsible for all of the following:**
>
>    >    (a)   Verification of the Physician's Assistant's credentials.
>    >    (b)   Evaluation of the Physician's Assistant's performance.
>    >    (c)   Monitoring the Physician's Assistant's practice and provision of medical care services.
>
>    (2) Subject to § 17048, a physician who supervises a Physician's Assistant may delegate to the Physician's Assistant the performance of medical care services for a patient who is under the case management responsibility of the physician, if the delegation is consistent with the physician's assistant's training.
>
>    (3) A physician who supervises a Physician's Assistant is responsible for the clinical supervision of each Physician's Assistant to whom the physician delegates the performance of medical care service under subsection (2).
>
>    (4) Subject to subsection (5), **a physician who supervises** a Physician's Assistant **shall keep on file** in the physician's office *or in the health facility or agency* or correctional facility in which the physician supervises the Physician's Assistant a permanent, written record that includes the physician's name and license number and **the name and license number of each Physician's Assistant supervised by the physician.**
>
>    (5) A group of physicians practicing other than as sole practitioners may designate 1 or more physicians in the group to fulfill the requirements of subsections (1) and (4).

There is no requirement for formal, periodic, written evaluation (Exhibit E, p. 2 of report), but neither did the Defendants prevent the Plaintiff from making such evaluations. Plaintiff testified that he was forbidden from making personnel decisions, but gave no example of being forbidden to provide medical supervision (Exhibit M, Miklashek dep., p. 14). Defendants did not say, "If you supervise and evaluate, you will be fired." His duties did change when he was relieved of supervisory responsibility (Exhibit M, Miklashek dep., pp. 53-56). As an independent contractor (Exhibit A, pp. 2 & 3 of 2; p., 6 of 6 and p. 1 of 1), Plaintiff was to develop an evaluation procedure. "Evaluation" can be simply a physician's mental process of paying attention to the assistant's competence and potential, which Plaintiff testified that he did, at least (Exhibit M, Miklashek dep., pp. 21, 78). See also p. 2 of the state investigation report regarding the Plaintiff's complaints (Exhibit E). Supervision was the physician's responsibility, and it was executed to the extent required by law.

Finally, Michigan statutes MCL 333.17076 (copy attached as Exhibit F), describe the supervision required for Physician's Assistants, which limits the scope of the Physician's Assistant's services to: (a) those within the scope of the supervising physician and which the supervising physician has delegated to the Physician's Assistant. Other limitations reference (b) bylaws, rules or regulations of the governing facility or organization in which the Physician's Assistant works, (c) restricts prescription of drugs and (d) dispensing of complimentary starter-dose drugs other than certain, controlled substances. No further reference is made to formality of evaluation.

The *third* circumstance involves acting pursuant to a legislative enactment. To the extent the Plaintiff acted upon an ethical responsibility (*Vagts, supra*, at 486), rather than legal duty to report his alleged belief that he was not supervising the Physician's Assistants, a sense of ethics

is not public-policy grounds for a "wrongful termination" claim are not met, according to *Suchdolski, supra*, at pp. 695-697.

Plaintiff was not subjected to constructive discharge because he wanted to follow a law. Apparently, Plaintiff wanted Defendants to both tell him how to supervise and evaluate; and let him berate the staff (Exhibits H, I, J, K). He refused to do the work required to formulate and conduct evaluations, claiming that he was not being paid to do that (Exhibit G and Exhibit M, Miklashek dep., pp. 22, 28). Eventually, he reported to the state to retaliate against the Defendants' failure to renegotiate the contract to pay him "extra" for the supervisory duties he was already bound to perform.

Nor was there retaliation from the Defendants; he continued to work until the end of his contract, 5 months after his employer learned that he had reported his criticisms to the Michigan Department of Community Health.

Under the public policy protection theory, and 42 U.S.C. 1983, temporal proximity to discharge can establish a *prima facie* case if the proximity is "very close;" *Clark County School Dist.* v. *Breeden*, 532 U.S. 268 (2001). Muskegon County received notice of the report the Plaintiff directed to the Department of Community Health on or about March 26, 2004 (Exhibit H). Notice of non-renewal was given on or about August 30, 2004, 5 months later. Even a four-month period of time between the exercising of alleged free speech and the consequences has been held to be <u>too long</u> to constitute circumstantial evidence of retaliation as a matter of law; *Cooper* v. *City of North Olmsted*, 795 F.2nd 1265, 1272 (C.A. 6, 1986).

It would not serve public policy to permit damages against the contractor-employer who takes action against the contractor- employee who makes an unfounded complaint to a state agency about his own performance. Such a person's judgment is demonstratively questionable;

14

and begs the questions of: "Why does this contractor/employee not do what he believes he should do?"

### ISSUE IV: WHISTLEBLOWER'S PROTECTION ACT

In Count IV of Plaintiff's Complaint, he alleges violation of the Michigan Whistleblowers' Protection Act, MCL 15.361, *et seq.* Plaintiff claims to have been sued in retaliation for whistle blowing when he reported to the Michigan Department of Community Health complaints that the Physician's Assistants were acting without requisite supervision. In this Act, an employee is defined as:

> §1(a) "'Employee" means a person who performs a service for wages or other remuneration under a contract of hire, written or oral, expressed or implied. 'Employee' includes a person employed by the state or a political subdivision of the state except for state-classified civil service.

Federal courts in this Circuit have held that the Michigan W.P.A. applies to employees, but not to independent contractors. *Ebelt* v. *County of Ogemaw*, 231 F.Sup. 2d 563, 576 (E.D. MI, 2002).

A.  The employment contract (Exhibit A) is abundantly clear that the Plaintiff was an independent contractor, not an employee of the County of Muskegon. The Plaintiff was hired to practice psychiatry on an average of 32 hours per week for clients of MCCMH. The Plaintiff must exercise his own, professional judgment in his practice of medicine (Exhibit A, pp. 1-6), particularly supervision of the Physician's Assistants to the extent that medical supervision is required to be conducted by a licensed physician.

B.  When there is no written contract defining the relationship, the economic reality test is used to determine whether the person reporting the alleged violation is an "employee" as defined in the act; *Chilingirian* v. *City of Frasier*, 200 Mich App 198, upon remand 442 Mich 873

(1973). Dr. Miklashek contracted to provide 32 hours of psychiatric services per week, but was free to maintain a private practice beyond that (and apparently did, Exhibit I). He was able to set his hours and (according to Exhibit J) refuse to attend joint meetings held at times which he considered unsuitable or inconvenient (Exhibit M, Miklashek dep., p. 52). The restrictions on the way he performed his services were imposed by the state and federal laws pertaining to the duties of the position, Exhibit A. He received only money compensation, no fringe benefits and no paid vacation (Exhibit A, p. 3 of 32 @ ¶E3; Exhibit M, Miklashek dep., pp. 38, line 24, and pp. 44, 61). Although he was expected to perform his services at the Defendants' clinic, this was not a matter of economics, but convenience. Physician's Assistants who were to work with Plaintiff, were at this location, this is where patients came for treatment, and where the patients' files were kept.

Plaintiff was compensated for his time and was expected to treat patients as his professional discretion governed (Exhibit A, p. 18 of 22 @ ¶¶ f and j), within limitations imposed by Medicaid (Exhibit A, pp. 3-6 of 6). He was also required to provide supervisory services to the Physician's Assistants, within that framework. He was left to bear his own expenses for the practice of psychiatry, insurance (Exhibit A in internal Attachment I), self education, keeping certification current, and to pay for any conferences or seminars for professional growth as he and his profession deemed appropriate (Exhibit M, Miklashek dep., pp. 41-44). Defendants could not tell him which medications and strength to prescribe, but if Defendants thought he was not cooperating with treatment programs that would be in the patients' best interests, there was no legal impediment to replacing him.

Testimony from 2 "outside" doctors (Dr. Wilson, Exhibit N, pp. 1, 10-20, 26 and Dr. Kohn, Exhibit O, pp. 1, 6, 8-13, 9-22) treated patients-in-common with Muskegon Community

Mental Health, and describe the difficulties which were communicated to the Defendants, before the contract expired and was not renewed. These and the internal memos describe conflicts caused by the Plaintiff (Exhibits H, I, J, K). Consideration of that information was a legitimate and sufficient basis for not renewing the contract. In fact, his failing to notify the director that a state agency was investigating, constituted grounds to terminate the contract immediately (Exhibit A, Attachment B on p. 3 of 3; ¶¶ I and J).

C.     The Whistleblower's Protection Act does *not* apply when the" employee" reporting the crime *is* the actor.

> The Whistleblower's Protection Act applies to an employee who reports a violation of law ... regardless of whether the criminal actor is the employer or a fellow employee. *Dudewicz, supra,* at 80.

Alternatively, for the reasons described in Issues I and III, the Plaintiff had to know that his Complaint to the Department of Community Health was frivolous and untrue. MCL 15.362 includes the caveat that the Whistleblower's Protection Act does not protect an employee who "knows the report is false."

                                                  CUMMINGS, McCLOREY, DAVIS & ACHO, PLC
                                                  Attorneys for Defendants

DATED: June 17, 2005

                                                  BY___/s/_____
                                                     Richard H. Winslow (P22449)
                                                     Business Address:
                                                     2851 Charlevoix Drive SE, Suite 237
                                                     Grand Rapids, MI  49546
                                                     616/975-7470